UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN COLLAZO,

    Petitioner,

v.                                        Case No. 8:07-cv-230-T-23AEP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Collazo petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for first degree murder,[1] for which conviction Collazo serves a life sentence. Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 11). The respondent admits the petition's timeliness (Response at 6 Doc. 11).

## **FACTS**[2]

Collazo retrieved a gun from his father's briefcase before departing for the victim's home. The victim, a friend of Collazo, was home alone. When the victim refused to honor a $250 loan, Collazo pulled the gun from his pocket and waived it at the victim. According to Collazo, the gun simply "went off striking the victim in the head." Collazo retrieved the spent casing, which he threw into the woods when he arrived home.

---

[1] This case proceeded in the state courts as a death penalty case until a shortly before trial.

[2] This summary of the facts derives from Collazo's brief on direct appeal (Respondent's Exhibit 2 at 2-3).

Collazo "wiped down" the gun to remove his prints and returned the gun to his father's briefcase. Investigators focused on Collazo after talking with people who knew the victim. Collazo's father allowed the police to test his guns, one of which the police identified as the murder weapon. By then Collazo had returned to his hometown in Massachusetts. When questioned by police in Massachusetts, Collazo admitted to the shooting.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is

satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

The state appellate court affirmed (Respondent's Exhibit 9) Collazo's conviction and sentence on direct appeal in a per curiam decision without a written opinion, and likewise affirmed (Respondent's Exhibit 14) the denial of his subsequent Rule 3.850 motion to vacate. The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Collazo bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the finding of fact in the state court's rejection of Collazo's post-conviction claims (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 11 at 88-93 and 144-47).

Collazo's defense was that the shooting was accidental. The only ground asserted in the federal petition is that trial counsel was ineffective for failing to seek suppression of Collazo's confession.

### **INEFFECTIVE ASSISTANCE OF COUNSEL**

Collazo claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by

- 4 -

> the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Collazo must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Collazo must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

- 5 -

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Collazo must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

After conducting an evidentiary hearing the state court rejected Collazo's claims of ineffective assistance of counsel and correctly recognized that Strickland governs such claims (Respondent's Exhibit 11 at 146-47). Consequently, Collazo cannot meet the "contrary to" test in Section 2254(d)(1). Collazo instead must show that the state court unreasonably applied Strickland or unreasonably determined the facts.

The state court reviewed the trial testimony and entered the following findings:

Ground Three - Ineffective assistance of counsel for failing to file a pre-trial motion to suppress Defendant's statement on the grounds that the police induced an involuntary confession from Defendant.

In this related claim, Defendant claims that his trial attorneys were ineffective for failing to file a motion to suppress his statement. Defendant's allegations relating to the refusal of the police to allow his mother to speak to him even though he was, in his mistaken belief, a minor, and the failure of the detectives to wait for his attorney to arrive even though he had not requested an attorney and voluntarily gave a statement are without merit as more fully discussed in response to Defendant's claim in ground two.

The remaining portion of the claim is that Defendant was coerced into giving his statement by detectives who told him that his father was being held in jail in connection with the death of the victim in this case, and that he was promised leniency in return for his statement. The uncontroverted testimony in this case was that Detective Bousquet told Defendant that they were still going to talk to Defendant's father, but that the only two people with access to the gun were Defendant and Defendant's father. *See*

- 6 -

> *Deposition of Jeff Bousquet, p. 18.* Detective Bousquet testified that, after the interview with Defendant was completed, he asked Defendant if his father was involved in this case and Defendant denied it. *See Trial Transcript, pp. 320-321.*
>
> Additionally, the uncontroverted testimony is that Detective Bousquet neither threatened Defendant, nor promised Defendant that he would do anything for him. *See Trial Transcript, pp. 321-322.* Defendant asked Detective Bousquet what he could do for him, and Detective Bousquet told him that he could do nothing but needed to find out what actually took place. *See Trial Transcript, pp. 309-310.* Defendant appeared, and according to Detective Bousquet was, very relaxed and courteous with investigators. *See Deposition of Jeff Bousquet, p. 20.*
>
> However, although Defendant's claim as to promises of leniency is directly refuted by Detective Bousquet's trial testimony, his claim as to being told that his father was being held in jail in connection with the victim's death cannot be conclusively refuted by the record, as the issue was never raised with Detective Bousquet prior to or during trial. Under the totality of circumstances, this alleged statement by Detective Bousquet may not be sufficient to render Defendant's statement involuntary. However, because Defendant's claim cannot be conclusively refuted by the record, the State shall be required to show cause as to why Defendant is not entitled to an evidentiary hearing on this issue.

Respondent's Exhibit 11 at 91-92. Following an evidentiary hearing, the state court rejected Collazo's claim as follows:

> Although Defendant's attorneys initially discussed and researched the topic of moving to suppress the statements made by the defendant in Massachusetts, they ultimately made the decision to abandon such an effort. Since it was uncontradicted that the statements made by the defendant in Massachusetts mirrored what the defendant told his attorneys in their confidential discussions with him, a decision was consciously made to allow the statements into evidence. While some portions of the Massachusetts statements were used against the defendant by the prosecutor, the statements were also used by Defendant's attorneys to get the defense of accidental shooting before the jury without exposing the Defendant to cross examination. Exposure to cross examination was a concern to Defendant's attorneys because it may have revealed the defendant's prior military service, that the defendant was familiar with his father's guns, that the defendant failed to call 911, that the defendant fled the state of Florida following the shooting, that the defendant had no good explanation for his possession of the firearm and that the defendant parked

- 7 -

> some distance from the scene and walked back to the scene. All of these matters could, in the opinion of his attorneys, have weakened the defense of accidental shooting, the defendant's strongest defense. While the defendant's attorneys were clearly aware of suppression issues, an informed, reasonable and strategic decision was made to abandon any efforts to suppress the defendant's statement in Massachusetts. Under the circumstances of this case, the decision to abandon suppression efforts was well within the realm of reasonable professional competence.
>
> . . .
>
> Based upon the foregoing, it is impossible for the Court to find that counsel made any errors of significance, let alone errors that rose to a level that deprived the defendant of his constitutional right to effective counsel. Furthermore, the evidence presented at the hearing in no way undermines the court's confidence in the outcome of the trial. An examination of the evidence presented to the Court leaves the Court similarly unable to find that there Is a reasonable probability that, but for any alleged deficiency in counsel's performance, the results of the trial would have been different. Under the circumstances, the Court finds that the defendant has failed to establish either prong of the test set forth in *Strickland*. The Court concludes that trial counsel utilized reasonable trial strategy under the circumstances of this case.

Respondents' Exhibit 11 at 145-57.

Collazo cannot show that the state post-conviction court's findings of fact are unreasonable. The record supports the court's factual findings.[3] Collazo cannot show that the state post-conviction court's decision is an unreasonable application of Strickland. The state court concluded that not suppressing Collazo's statement was a reasonable strategic decision.

---

[3] One of Collazo's trial attorneys testified during the Rule 3.850 evidentiary hearing (Respondent's Exhibit 11 at 267) that not suppressing the statement allowed the jury to hear Collazo's testimony without subjecting Collazo to cross-examination.

> And I felt by the jury getting to listen to the tape of his statement, his confession, that I was going to get my client's testimony, which he would have to give on the stand — I was going to get my client's testimony with no cross examination. I said, "What a beautiful thing this is. He's going to tell them this was an accident. He's told them that in his statement. That's his confession. And he's going to do that without having to have Halkitis or any other State Attorney cross examine. It was a good thing."

- 8 -

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Collazo cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

The term "strategy" is broadly defined. "By 'strategy,' we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." Chandler v. United States, 218 F.3d at 1314 n.14. See also Felker v. Thomas, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others.") and Stanley v. Zant, 697 F.2d 955, 964 (11th Cir.

1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

The Strickland test requires a court to determine whether counsel's strategic decision was "reasonable." Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); Minton v. Sec'y, Dep't of Corr., 271 Fed. Appx. 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' ") (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003). Similarly, deciding the reasonableness of counsel's actions is not viewed through the lense of twenty-twenty hindsight. Strickland v. Washington, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). And in a federal habeas corpus proceeding this court's duty is not to independently determine the reasonableness of counsel's actions, but "to determine whether the state habeas court was objectively reasonable in its Strickland inquiry." Putnam v. Head, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), cert. denied, 537 U.S. 870 (2002).

The state post-conviction court's decision was a reasonable application of Strickland. Trial counsel knew that Collazo believed the confession was coerced because of the threats that the police "would get my Dad if I didn't tell them what had happened," but counsel "didn't feel that was probably a ground for suppression, [a topic] we discussed . . . at length" (Respondent's Exhibit 11 at 265-66). According to counsel,

- 10 -

"we didn't want to keep the confession out because it told his story" (Respondent's Exhibit 11 at 268), and "I didn't see any benefits" to suppressing the statement (Respondent's Exhibit 11 at 269).

Collazo contends that trial counsel (1) was ineffective because the prosecutor was able to use portions of the statement to refute the argument that the shooting was accidental and (2) should have pursued the accidental shooting theory by relying solely on the state expert's testimony that the safety on the gun malfunctioned during their tests. The first contention is meritless because trial counsel knew the statement contains both favorable and unfavorable portions.[4] The second contention is meritless because, in addition to using twenty-twenty hindsight, excluding the statement would have both precluded the jury from hearing Collazo's explanation that the shooting was accidental and required the jury to accept the argument that the faulty safety caused the shooting. Without the statement the jurors could not assess the relevancy of the faulty safety. Without hearing the statement the jurors would not know that Collazo's contention was that he waived the gun at the victim intending to only frighten him when it accidentally discharged.

---

[4] One of Collazo's trial attorneys testified during the Rule 3.850 evidentiary hearing (Respondent's Exhibit 11 at 268) as follows:

> Q. [T]he State Attorney specifically during closing argument used quotations from that statement in his argument to the jury on why they should convict Mr. Collazo.
>
> A. And I used them in my argument as to why they shouldn't.

- 11 -

Accordingly, Collazo's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Collazo and close this case.

ORDERED in Tampa, Florida, on October 20, 2009.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE